UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOSE RAUL JAQUEZ,

                           Plaintiff,

v.

NANCY BERRYHILL, Acting
Commissioner of Social Security,

                           Defendant.

Case No.: 18CV536 GPC (BGS)

**REPORT AND
RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND
GRANT THE COMMISSIONER'S
CROSS MOTION FOR SUMMARY
JUDGMENT**

[ECF 14, 15, 18]

Plaintiff Jose Raul Jaquez has filed a complaint seeking judicial review of Defendant Commissioner of Social Security's ("Defendant" or "Commissioner") denial of disability and supplemental security income benefits under the Social Security Act. (ECF 1.) Plaintiff's Motion for Summary Judgment seeks reversal of the ALJ's decision denying benefits and a remand for further administrative proceedings. (Pl.'s Mot. for Summ. Judgment [EFC No. 14] ("Pl.'s Mot.").) Plaintiff argues the Administrative Law Judge ("ALJ") committed reversible error by failing to resolve a conflict between a vocational expert's testimony and sources upon which ALJs may rely in determining whether a claimant is capable of other available work. (*Id.*) The Commissioner argues in her Cross Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment that the ALJ's decision was supported by substantial

evidence and should be affirmed. (Def.'s Cross Mot. for Summ. J., [ECF Nos. 15-16] ("Def.'s Cross Mot.").) Both parties filed reply briefs. (ECF Nos. 17, 19.[1])

The Honorable Gonzalo P. Curiel has referred this matter to the undersigned for a report and recommendation. After careful consideration of the parties' arguments, the administrative record and the applicable law and for the reasons discussed below, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED** and the Commissioner's Cross Motion for Summary Judgment be **GRANTED.**

# I. PROCEDURAL HISTORY

Plaintiff's applications for benefits with disability commencing on April 24, 2013 were denied initially and on reconsideration. (AR 328-41 (applications); 228-31 (disapproved claim); 232-34 (request for reconsideration); 235-40 (denial on reconsideration).) Plaintiff requested a hearing before an ALJ. (AR 243-44.) The hearing was held on April 1, 2016. (AR 122-61.) Plaintiff was represented by counsel and testified, along with a vocational expert. (*Id.*) On May 9, 2016, the ALJ issued a decision finding Plaintiff was not disabled and denied Plaintiff's applications for benefits. (AR 50-64.) Plaintiff sought Appeals Council review and submitted new information not provided to or raised with the ALJ. (AR 8-49, 326-27, 404-415.) The Appeals Council denied review on January 24, 2018. (AR 1-7.) This action followed.

# II. SUMMARY AND ANALYSIS OF THE ALJ DECISION

The Court briefly summarizes the ALJ's five-step analysis. Because the issue in this case arises at the fifth step of the five-step evaluation, the Court's discussion of the earlier steps that are not at issue is brief. Because Plaintiff does not raise any challenges regarding the Plaintiff's RFC or the medical evidence, (Pl.'s Mot. at 4), the Court does not discuss the underlying medical evidence. The particular challenges raised by Plaintiff are discussed more below. (*See* Section IV.)

---

[1] Plaintiff's Application to file a late Reply brief, (ECF 18), is **GRANTED**.

The ALJ's decision goes through each potentially dispositive step of the familiar five-step evaluation process for determining whether an individual has established his or her eligibility for disability benefits.  (AR 39-50); *see Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724-25 (9th Cir. 2011); *see* 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 24, 2013.  (AR 55.)  At step two, the ALJ found Plaintiff had diabetic retinopathy secondary to insulin dependent diabetic mellitus which the ALJ found severe.  (AR 55).  At step three, the ALJ considers whether the claimant's impairments "meet or equal" one or more of the specific impairments or combination of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the listings.  *See* §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(d), 404.1525, 404.1526, 416.925, 416.926.  Here, the ALJ found Plaintiff's impairments did not meet a listing.  (AR 57.)

If the claimant does not meet a listing, the ALJ "assess[es] and makes a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R. §§ 404.1520(e), 416.920(e).  A claimant's residual functional capacity ("RFC") is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c); *see also Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998).  The RFC is used at the fourth and fifth steps to determine whether the claimant can do their past work (step four) or adjust to other available work (step five).  *Id.*

Here, the ALJ found the following RFC for Plaintiff:

[C]laimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant is limited to single eye vision; sans depth perception; sans hazards (such as heights and dangerous machinery); sans concentrated exposure to chemicals or fumes; requires dark glasses for vision protection against bright light; is limited to occasional reaching, handling, fingering; and occasional fine visual acuity.

(AR 58.)

At step four, the ALJ found Plaintiff could not do his past work as an inventory clerk. (AR 61.) "At step five . . . the ALJ considers the applicant's background and residual functional capacity, that is, what physical tasks the applicant can still perform despite his or her limitations, to decide if the applicant can make an adjustment to some other available job." *Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2016). If the claimant "can make an adjustment to other available work," the claimant will be found not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). If not, then the claimant is disabled. *Bustamante*, 262 F.3d at 954.

Here, at step five, the ALJ heard and relied on testimony from Bonnie Sinclair, a vocational expert ("VE") that work existed in significant numbers in the national economy for a person of Plaintiff's age, education, work experience, and subject to Plaintiff's limitations. (AR 150-161.) More specifically, the VE testified that a person subject to the limitations described in the ALJ's hypothetical would be capable of the counter clerk occupation, DOT 349.366-010[2] — 117,400 jobs available —and usher occupation, DOT 344.677-014 — 90,200. (AR 151, 157-158.) Based on the initial hypothetical presented by the ALJ, the VE initially testified Plaintiff was capable of two other positions. (AR 151.) After questions from Plaintiff's counsel and further questioning of the VE by the ALJ, the ALJ set out a hypothetical that modified the prior hypothetical. (AR 157.) The VE then concluded Plaintiff was capable of the two positions noted above. (AR 157-158.)

As discussed below, Plaintiff challenges the ALJ's reliance on the VE's testimony that Plaintiff was capable of these positions subject to the limitations of the RFC.

_____

[2] The parties agree the counter clerk position relied on by the VE is DOT 249.366-010 rather than 349.366-010.

## III. SCOPE OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of a final agency decision. 42 U.S.C. § 405(g). This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision. *See id.*; 20 C.F.R. § 404.900(a)(5). The matter may also be remanded to the Social Security Administration ("SSA") for further proceedings. 42 U.S.C. § 405(g).

If the Court determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007 ("quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins*, 466 F.3d at 882. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## IV. DISCUSSION

Plaintiff challenged the ALJ's reliance on the VE's testimony that Plaintiff could do two different occupations, counter clerk and usher, subject to the limitations found by the ALJ. These occupations provided the basis for the ALJ's conclusion that Plaintiff could adjust to other work that exists in significant numbers in the national economy.

In the Commissioner's cross motion, she concedes "the counter clerk position is outside of Plaintiff's functional limitations." (Cross-Motion at 4.[3]) However, the

_____

[3] *See also* Def.'s Cross Motion at 7 ("the ALJ's RFC was inconsistent with the counter clerk job definition, and the ALJ erred in relying on this position as work that Plaintiff could perform.")

18CV536 GPC (BGS)

Commissioner argues that error was harmless because the ALJ correctly found Plaintiff could perform the usher position based on the RFC and hypothetical presented to the VE and that occupation alone exists in significant enough numbers. (*Id.* at 7.) Accordingly, the Court's analysis addresses whether the ALJ erred or his decision was not supported by substantial evidence with regard to the usher position.[4]

### A. Plaintiff's Challenges Regarding the Usher Position

Plaintiff argues the ALJ erred in failing to resolve conflicts between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT" or "*Dictionary*"),[5] Occupational Outlook Handbook ("OOH"), County Business Patterns ("CBP"), and the Occupational Information Network ("O*NET").[6] The Commissioner argues there was no conflict between the VE's testimony and the DOT and that any conflicts based on any other sources were waived because they were not raised in any respect before the ALJ. Additionally, the Commissioner argues that even if not waived, the ALJ did not err in not addressing these sources because he is not required to and the ALJ's decision was supported by substantial evidence.

---

[4] Given the Court's conclusion that the ALJ's decision with regard to the usher position was without error and supported by substantial evidence, the ALJ's error as to the counter clerk occupation is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (holding "that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination'" (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008))). The VE testified there were 90, 200 usher positions available. (AR 158.) The Ninth Circuit has found 25,000 nationally is sufficient. *Gutierrez v. Commissioner of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (finding 25,000 national jobs sufficient).

[5] The DOT is "a resource compiled by the Department of Labor that details the specific requirements for different occupations." *Gutierrez*, 844 F.3d at 807.

[6] As explained below, Plaintiff's challenges as to the usher position assert conflicts with O*NET, however, the Court has considered the issue as to all of these sources.

**1. Conflicts Between VE Testimony and DOT**

Plaintiff argues the ALJ failed to recognize and resolve a conflict between the VE's testimony and the DOT regarding the usher position. At step five, an ALJ may rely on a VE "to provide testimony about jobs the applicant can perform despite his or her limitations." *Gutierrez*, 844 F.3d at 806-07. If the VE's opinion conflicts with "the *requirements listed in the DOT*, then the ALJ must ask the expert to reconcile the conflict" before relying on that testimony. *Gutierrez*, 844 F.3d at 807 (emphasis added); *see also Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017). The DOT is different from other sources in this respect because Social Security Ruling 00-4p requires ALJ's to consider it. *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 n.6 (9th Cir. 2017). "The requirement for an ALJ to ask follow up questions is fact-dependent." *Gutierrez*, 844 F.3d at 808. And, "[t]he conflict must be 'obvious or apparent' to trigger the ALJ's obligation to inquire further." *Lamear*, 865 F.3d at 1205 (quoting *Gutierrez*, 844 F.3d at 808). "This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected." *Gutierrez,* 844 F.3d at 808. "[T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." *Id.*

### a) No Conflict Based on Lighting

Plaintiff asserts that based on common sense Plaintiff would be required to complete the responsibilities of an usher while moving between lighted areas and low-light areas. (Pl.'s Mot. 10.) Plaintiff argues that this unstated requirement created a conflict between with the VE's testimony that Plaintiff could do this occupation and the DOT because the VE did not explain how Plaintiff could move between low-light and lighted areas in dark glasses. (*Id.* at 10-11.) The Commissioner argues there is no conflict because the DOT lacks any requirement to move from bright light to dark and Plaintiff only needed dark glasses for bright light. (Def.'s Mot. at 5-6; Def.'s Reply at 4.)

The narrative for the usher position in the DOT describes it as assisting customers at entertainment events in finding seats, searching for lost items, and locating facilities

like restrooms.  DOT 344.677-014.  Neither the DOT nor the associated Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), includes any requirements dictating tolerance for or exposure to any particular lighting conditions.  In this respect, there was no conflict between the VE's testimony (that did not account for this requirement) and the DOT (that lacked this requirement) for the ALJ to resolve.  The ALJ did not err in failing to resolve a non-existent conflict.  And, the VE's testimony was certainly not "at odds with the *Dictionary*'s listing of job requirements that are essential, integral, or expected."  *Gutierrez,* 844 F.3d at 808.

Plaintiff's argument that the ALJ was required to recognize this absent requirement based on common sense and then resolve a conflict between the requirement and the VE's testimony is not supported by the cases Plaintiff relies on, *Gutierrez v. Colvin* and *Lamear v. Berryhill*.  As explained more below, in both of these cases, the DOT occupations the ALJ found the claimants could do *included requirements* that the claimants potentially could not do based on their limitations.  *Gutierrez*, 844 F.3d at 807-09; *Lamear*, 865 F.3d at 1203-04.  Neither created a new requirement not included in the DOT and then found the ALJ erred in not resolving a conflict between that requirement and the VE's testimony.  This is significant because the ALJ's obligation to *sua sponte* address a conflict between VE testimony and the DOT is specific to the DOT.  As discussed more fully below, the ALJ is not required, without any inquiry from a claimant's counsel, to imagine every possible additional requirement that might exist for an occupation and resolve conflicts between that requirement and the VE's testimony. (*See supra* IV.A.2.b)(1).); *see also Shaibi*, 883 F.3d at 1109-10.

In *Gutierrez*, the DOT occupation the ALJ found the claimant could do based on VE testimony, cashier, *included* a requirement for frequent reaching,[7] but the claimant

---

[7] Appendix C to the SCO provides a lengthy list of specific physical demands, including reaching.  It also provides four categories to describe the absence or presence and frequency of each physical demand with a definition.  SCO, Appendix C.  "Not Present"

could not reach overhead with her right arm. 844 F.3d at 807. In concluding there was no obvious or apparent conflict for the ALJ to resolve, the court relied in part on how uncommon it is for cashiers to reach overhead. *Id.* at 808-09. In short, the court found this was not an apparent and obvious conflict because overhead reaching was not common for cashiers. *Id.* at 808. The court was assessing whether a subset of reaching (overhead with both arms) was likely or foreseeable enough for the cashier occupation to require the ALJ to inquire further. *Id.* The court concluded it was not and found the ALJ correctly relied on the VE's testimony.

In *Lamear*, the three DOT occupations the ALJ found the claimant could do required frequent handling, fingering and reaching, but as to his left arm, the claimant could only occasionally handle, finger, and reach.[8] *Lamear*, 865 F.3d at 1203. The issue was whether the DOT's handling, fingering, and reaching requirements applied to both hands or arms. *Id.* at 1204. The court acknowledged it is a fact-dependent inquiry and considered the descriptions of all three occupations and the DOT's listed requirements for frequent (up to 2/3 of the day) handling, fingering, and reaching as well as the claimant's limitation to only occasional handling, fingering in one hand. *Id.* at 1205-06. The court was determining whether it was likely and foreseeable the claimant would have to perform a requirement *listed in the DOT* for all three occupations. *Id.* at 1205. In reversing and remanding the case, the court concluded it was and that the record lacked an explanation for the discrepancy between the DOT listed requirements and the claimant's limitations. *Id.* at 1205-06.

---

is "[a]ctivity or condition does not exist." *Id.* "Occasionally" is "[a]ctivity or condition exists up to 1/3 of the time." *Id.* "Frequently" is "[a]ctivity or condition exists from 1/3 to 2/3 of the time." *Id.* "Constantly" is "[a]ctivity or condition exists 2/3 or more of the time." *Id.*

[8] Fingering and handling, like reaching (*see infra* note 7) are also included as physical demands in Appendix C to the SCO for DOT occupations.

In contrast, here, Plaintiff is asking the court to find the ALJ erred in failing to recognize and resolve a conflict with a completely absent requirement not included in the DOT. The Court is not persuaded that *Gutierrez* and *Lamear* should be interpreted to support the creation of absent requirements for an occupation when both cases were addressing possible conflicts with requirements listed in the DOT. Absent authority to the contrary, the Court is not willing to find the ALJ erred in failing to resolve a conflict between the VE's testimony and a requirement—moving from lighted to low-light areas—not listed in the DOT or SCO.

Even if the Court accepted Plaintiff's argument that the ALJ should have recognized this unlisted requirement for the usher position—moving from lighted to low-light areas —it would still not create a conflict with the VE's testimony. Plaintiff's RFC does not preclude Plaintiff from moving from lighted areas to low-light areas. Rather, as set forth above, it only requires dark glasses for protection against bright light. (AR 58.) Consistent with this, the hypothetical presented to the VE only indicated a need for dark glasses for bright light. (AR 151.) There would be no conflict even if Plaintiff had to work in lighted and low-light areas because protection was only needed for bright lights.

Plaintiff attempts to overcome this lack of conflict by asking the Court to further assume based on common experience that the lighted areas an usher must work in are "well-lit" and that "well-lit" is equivalent to "bright light." (Pl.'s Reply at 3.) Not only is the Court unwilling to make these assumptions based on speculation,[9] but even with these

---

[9] The Court notes that it is also not at all "common experience, common knowledge, or common sense" that most areas of entertainment venues are "well-lit," certainly not what could be described as bright light. (Pl.'s Reply at 3 (citing *Gutierrez*, 844 F.3d at 808).) For example, although the hallways of movie theaters are brighter than the theaters themselves, they are often dimly lit. The Court is not suggesting this is always the case, but the variation in views based on individual experience illustrates the danger in speculating as a general matter to create new occupation requirements and then finding fault with an ALJ for not addressing that new requirement, all without ever having raised the issue with the ALJ.

leaps there is still no obvious and apparent conflict because there is no reason Plaintiff could not use dark glasses when working in bright light, assuming there is any at all, and remove them when not necessary. Plaintiff's argument that the conflict existed because the VE failed to explain how Plaintiff could help patrons find seats in a low-light area wearing dark glasses is also without merit for the same reason. Plaintiff's RFC requires dark glasses for protection against bright light. He would have no reason to be in dark glasses in low light.

In conclusion, the ALJ did not err by failing to resolve a conflict between the VE's testimony and a requirement not set forth in the DOT or the SCO to move between lighted and low-light areas. The cases relied on by Plaintiff do not support the creation of the requirement and even if the Court were to do so, there was still no conflict because Plaintiff only needs dark glasses for exposure to bright light.

### 2. Challenges Based on OOH, CBP or O*NET

Plaintiff argues that the ALJ erred in relying on VE testimony without addressing possible conflicts between that testimony and information in the OOH, CBP, and O*NET (collectively "non-DOT sources").[10] (Pl.'s Mot. at 15 (citing AR 407 (Plaintiff's submission to Appeal's Council relying on O*NET information).) Specifically, Plaintiff argues, relying on O*NET, that ushers require greater finger dexterity and near vision acuity than Plaintiff's limitations allowed. (Pl.'s Mot. at 8-9, 14-15; Pl.'s Reply at 4.) Plaintiff also argues, relying on O*NET, that a typical usher does not work enough hours for that work to constitute substantial gainful activity. (Pl.'s Mot. at 15-16, Pl.'s Reply at 3-4.) The Commissioner argues Plaintiff waived any challenge to a conflict between information in the OOH, CBP, or O*NET and the VE's testimony by not raising the issue

---

[10] Although Plaintiff's challenges as to the usher position rely only on information from O*NET, the Court addresses all three sources because they are generally treated the same. However, as noted below, O*NET is arguably on even lesser ground than the CBP and OOH because it is not even listed within the regulations as a source.

in any respect before the ALJ, and that the VE's testimony and the DOT support the ALJ decision. (Def.'s Cross Mot. at 3-5.) Additionally, the Commissioner argues there is absolutely no support for Plaintiff's novel argument that the ALJ was required to address whether the usher occupation could be performed for enough hours per week to constitute substantial gainful activity.

The SSA may rely on numerous sources for jobs information. 20 C.F.R. § 404.1566(d). The OOH and the CBP are both sources listed as examples of sources the SSA will take notice of for job information along with the DOT, discussed above. 20 C.F.R. § 404.1566(d); *see also Shaibi*, 883 F.3d at 1108. And, although not listed as a resource for jobs information in § 404.1566(d), the Court is willing to assume that a vocational expert or an ALJ could consider jobs information on O*NET.[11] *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (explaining and ALJ may take notice of any reliable job information). However, as discussed more fully below, the OOH, CBP, and O*NET are not treated the same as the DOT for purposes of waiver of challenges based on these non-DOT sources or conflicts between them and a VE's testimony.

### a)    Waiver

"[A]t least when represented by counsel, [claimants] must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v.*

---

[11] The Court acknowledges that there are differing opinions regarding reliance on O*NET for purposes of disability adjudication. *Beamesderfer v. Berryhill*, Case No. ED CV 17-0868 SS, 2018 WL 2315956, *7 (C.D. Cal. May 18, 2018) (explaining that the Occupational Information Development Advisory Panel ("OIDAP") review, commissioned by the SSA, found O*NET was not suitable for disability adjudication); *Rodriguez v. Astrue*, No. CV-10-0636-TUC-DTF, 2012 WL 552713, *3 and n.3 (D. Ariz. Feb. 21, 2012) (rejecting assertion that O*NET is now used by the SSA and citing OIDAP review that determined it was not suitable for disability adjudication); *but see Madueno v. Colvin*, No. 2:15-cv-0022 AC, 2016 WL 1213152, *4 n. 6 (E.D. Cal. March 29, 2016) (noting the *Department of Labor* now relies on O*NET rather than the DOT, collecting cases noting the obsolescence of the DOT, but acknowledging the DOT is still the SSA's primary source for jobs information for disability review) (emphasis added).

*Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). This applies to issues based on sources like the OOH, CBP, and O*NET.[12] *See Shaibi*, 883 F.3d at 1109 (challenges based on CBP or OOH as to job numbers are forfeited if not raised in administrative proceedings); *Frugoli v. Berryhill*, 733 Fed. Appx. 907, 907-08 (9th Cir. Aug. 10, 2018) (finding a plaintiff forfeited his argument that a VE's testimony conflicted with the OOH when he, "represented by counsel before the ALJ, . . . did not raise this argument"); *see McCloud v. Berryhill*, Case No. ED CV 16-2400-SP, 2018 WL 987222, at *5 (C.D. Cal. Feb. 20, 2018) (finding waiver in failing to raise challenge based on OOH before ALJ).

The Ninth Circuit has applied *Shaibi* and found that if a claimant, represented by counsel, fails to raise challenges based on these non-DOT sources before the ALJ or the Appeals Council, the challenges are waived. *See Simpson v. Berryhill*, 717 Fed. Appx 670, 674 (9th Cir. Nov. 24, 2017) (finding waiver of argument ALJ erred in failing to take "notice of job numbers and vocational evidence in sources other than DOT" because the issue was not presented to the ALJ or Appeals Council); *Frugoli*, 733 Fed. Appx. at 907-08 ("By failing to even obliquely suggest that the VE's occupational-requirements opinion might be unreliable at any point during administrative proceedings Frugoli forfeited his argument."). District courts have reached the same conclusion. *See e.g. Williams v. Berryhill*, Case No. ED CV 16-1989-PJW, 2017 WL 8283320, at *2 (C.D. Cal. Dec. 4, 2017) (collecting cases); *Troy H. v. Berryhill*, No. ED CV 18-00322-DFM, 2019 WL 2413020, at *2 (C.D. Cal. June 7, 2019) (finding plaintiff waived argument his limitations conflicted with O*NET by failing to raise it before the agency); *Intorre v. Berryhill*, Case No. ED CV 17-260-KS, 2018 WL 1224422, at *8 (CD. Cal. Mar. 8, 2018) ("To the extent Plaintiff's argument is premised on the ALJ's failure to consider

---

[12] Although the *Shaibi* court was not addressing O*NET specifically, the Court can deduce it would not be treated more favorably that OOH or CBP given O*NET is not even listed as a resource in the regulations with OOH and CBP and the court flatly rejected putting these sources, listed in the regulation, on par with the DOT. *Shaibi*, 883 F.3d at 1110; *see also infra* note 11.

the [OOH], or any other vocational materials apart from the DOT, that argument is forfeited").

The issue presented here has been addressed less.[13] Plaintiff, represented by counsel, raised none of the issues he attempts to raise here before the ALJ. However, he did submit information based on O*NET to the Appeals Council.[14] (AR 406-407.) Plaintiff argues that because evidence submitted to the Appeals Council is considered part of the record for purposes of determining if the ALJ decision is supported by substantial evidence, any issue raised before the Appeals Council, even if not raised in any respect to the ALJ, is preserved. (Pl.'s Mot. at 14 (citing *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163-64 (9th Cir. 2012)); Pl.'s Reply at 3 (citing *Brewes*, 682 F.3d at 1163-64 and *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011)).) The Commissioner counters that, based on *Shaibi*, a decision specifically addressing waiver of challenges based on these non-DOT sources, Plaintiff had to raise his challenge before the ALJ at least generally to preserve them. (Def.'s Cross Mot. at 3-4 (citing *Shaibi*, 883 F.3d at 1108); Def.'s Reply at 1-2 (citing *Shaibi*, 883 F.3d at 1108).) The Commissioner argues this would have given the VE an opportunity to look for and address potential conflicts with the non-DOT sources. (Def.'s Reply at 2.)

The district court decisions addressing this issue have reached different conclusions. In *McCloud v. Berryhill*, the court, relying on *Shaibi* and *Meanel*, concluded that a challenge based on the OOH was waived even though it was raised before the Appeals Council. 2018 WL 987222, at *4. The court relied on *Meanel*'s requirement to "raise all issues and evidence at their administrative hearings in order to

---

[13] The court notes that some of the district court cases cited above or cited in the cases above, may involve instances where the claimant did raise the issue to the Appeals Council. However, that is not clear enough from the decisions for the Court to rely on them for that point.

[14] Plaintiff submitted information from the other sources regarding the counter clerk position.

preserve them on appeal" and *Shaibi*'s directive that all claimant's counsel had to do was raise the issue "in a general sense before the ALJ." *Id.* (quoting *Meanel*, 172 F.3d at 1111 and *Shaibi*, 883 F.3d at 1110). Similarly, in *Becerra v. Commissioner of Social Security*, the court found challenges based on O*NET were waived. No. 2:15-cv-0643-KJN, 2016 WL 7491627, *3 (E.D. Cal. Dec. 30, 2016).[15] In reaching this conclusion, the court found the ALJ was in the best position to "resolve factual and evidentiary inconsistencies, including conflicts concerning vocational information and testimony." *Id.* at *3. The court went on explain that later second guessing a VE's testimony "would inject a significant amount of inefficiency into an already-delayed claim resolution process." *Id.*

However, in *Harris v. Berryhill*, the court found a challenge raised only with the Appeals Council was not waived. Case No. 5:17-cv-2204-SHK, 2018 WL 3493778, at *5 (C.D. Cal. July 20, 2018) (citing on *Albritten v. Berryhill*, Case No. CV 17-0925-JPR, 2018 WL 3032860, at *3 (C.D. Cal. June 14, 2018)) and *Ross v. Comm'n of Soc. Sec. Admin.*, No. 6:16-cv-00903-AA, 2018 WL 263639, at *2 (D. Or. Jan. 2, 2018)). *Harris* did not expand on this conclusion, however, the cases upon which *Harris* relies seem to interpret *Lamear* to indicate that raising issues before the Appeals Council may preserve them.[16] However, *Lamear* involved a challenge based on the DOT, not the non-DOT sources at issue here and specifically addressed in the court's later *Shaibi* decision.

---

[15] *Beccera* is arguably distinguishable because, as the court explained, it found the claimant's letter to the Appeals Council deficient. Regardless, the court's discussion of the importance of raising issues before the ALJ is instructive here.

[16] The two cases *Harris* relies on are both distinguishable from this one factually in that *Albritten* involved the absence of evidence before the ALJ for purposes of a step four analysis, not step five, and not related to the sources at issue here. 2018 WL 3032860, at *3. *Ross* involved a claimant not raising an issue to the Appeals Council or ALJ that the claimant could not have raised until the ALJ decision was issued, claimant's credibility. 2018 WL 263639, at *2. Neither involved non-DOT sources like those at issue here and more directly addressed by *Shaibi*.

Additionally, *Lamear* only notes the plaintiff had raised the disputed issue as to the DOT to the Appeals Council in distinguishing *Meanel* and goes on to explain the decision is based on the ALJ's obligation, discussed above, to reconcile apparent conflicts between VE testimony and the DOT. *Lamear*, 864 F.3d at 1206. As discussed at length above, no similar obligation exists with regard to sources other than the DOT.

The Court concludes, based primarily on *Shaibi* and *Meanel*, the Ninth Circuit cases directly addressing waiver, that Plaintiff has waived his challenges based on non-DOT sources by not raising those issues before the ALJ in any respect. The court recognizes that *Shaibi* and *Meanel* are both factually distinguishable because they involved challenges not raised before the ALJ *or the Appeals Council*. *Shaibi*, 883 F.3d at 1108; *Meanel*, 172 F.3d at 1115. However, both of these cases' discussion of the issue of waiver persuades the court that Plaintiff's challenges based on sources other than the DOT are waived.

The *Shaibi* court explains how challenges should be raised *before the ALJ* to preserve them. 883 F.3d at 1110. Although the court acknowledges a claimant may not be able to question the VE with information from these other sources within minutes of the VE's testimony,[17] the court explains it would be enough to raise the issue in a general sense by simply inquiring as to whether the testimony is consistent "with the CBP, OOH, or other sources in 20 C.F.R. § 404.1566(d)."[18] *Id.* If this minimal step is taken, the court explains, "an ALJ, on request, would permit" supplemental briefing. *Id.* "*If the ALJ declined* to do so," the claimant could then raise the issue to the Appeals Council.

---

[17] Plaintiff takes this statement out of context to argue this means claimants cannot be expected to raise challenges before the ALJ, without acknowledging the statement was made right before explaining how challenges should be raised *before the ALJ* despite this.
[18] The Court again notes that O*NET is not even among those referenced in the regulation. However, notwithstanding the discussion above, (*see infra* note 11), for purposes of the waiver analysis, the court recognizes it as source of information regarding occupations.

*Id.* (emphasis added). There is no indication that raising these challenges for the first time with the Appeals Council would preserve them. This suggests that challenges should be raised with the ALJ, even if only minimally, to preserve them.

*Meanel v. Apfel*'s very clear statement that when a claimant is represented by counsel "all issues and evidence" must be raised "at their *administrative hearings* in order to preserve them on appeal" also suggests challenges must be raised before the ALJ to preserve them on appeal. 172 F.3d at 1115 (emphasis added). Additionally, *Meanel*'s indication that the ALJ is "in the optimal position to resolve the conflict" between new evidence and that relied on by the VE suggests it is critical to raise issues before the ALJ. *Id.* The *Shaibi* court reiterated the same point, quoting from *Meanel* and explaining the ALJ was in the "optimal position to resolve conflict." *Shaibi*, 883 F.3d at 1109.

The Court finds Plaintiff waived his challenges based on non-DOT sources by failing to raise those challenges before the ALJ.

**b)      ALJ Did Not Err and Decision is Supported by Substantial Evidence**

Even if Plaintiff did not waive his challenges based on non-DOT sources, the ALJ did not err in not considering conflicts between these sources and the VE's testimony, and the ALJ's decision was supported by substantial evidence. The VE testified that with the limitations to occasional near visual acuity and occasional handling and fingering, as well as other limitations, Plaintiff was capable of the usher occupation. (AR 157-159.) Based on information on *O*NET*, Plaintiff argues the usher position requires levels of near vision acuity, categorized as "important," and finger dexterity, "somewhat important," Plaintiff lacked.

**(1)      ALJ Did Not Err in Not Resolving Conflict with O*NET**

An ALJ is required to "resolve any apparent conflict between the VE's testimony and the *DOT*, regardless of whether the claimant raises the conflict before the agency." *Shaibi*, 883 F.3d at 1109 (citing SSR 00-4P, *Lamear*, 865 F.3d at 1206-07, and *Massachi*

*v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). Conflicts between VE testimony and the *DOT* are not waived by failing to raise them before the ALJ because the ALJ is required to address the *DOT*. *See Lamear*, 864 F.3d at 1206.

The same is not true for the CBP, OOH, or O*NET.[19] *Shaibi*, 883 F.3d. at 1109-10. As the *Shaibi* court explains, and ALJ can rely on a VE's testimony without inquiring *sua sponte* into the foundation for that VE's opinion. *Id.* at 1110 (citing *Bayliss*, 427 F.3d at 1218 (9th Cir. 2005) and *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995)). District courts applying *Shaibi*,[20] have concluded that the ALJ has no obligation to reconcile conflicts between VE testimony and these non-DOT sources. *Beamesderfer v. Berryhill*, 2018 WL 2315956, *7 (C.D. Cal. May 18, 2018) ("While Agency guidelines require an ALJ to investigate and elicit a reasonable explanation for any conflict between the DOT and VE testimony, the guidelines do not require the ALJ to resolve conflicts between VE testimony and other vocational publications or information"); *Wagner v. Berryhill*, Case No. CV 17-5698-AS, 2018 WL 3956485, *6 (C.D. Cal. Aug. 14, 2018) ("The ALJ had no obligation to address the VE's testimony from other sources such as O*NET or OOH"); *Vizcarra v. Berryhill*, Case No. ED CV 16-01736-DFM, 2018 WL 1684315, *2 (C.D. Cal. April 5, 2018) ("An ALJ has no duty to *sua sponte* investigate possible conflicts between the VE's testimony and the OOH" and "given O*NET is not even listed in the Commissioner's regulations as an alternative source of job information, Plaintiff's argument that the ALJ should have *sua sponte* investigated possible conflicts with that publication has even less force."); *Gonzalez v.*

---

[19] As the Ninth Circuit has explained, the obligation to *sua sponte* reconcile conflicts between the VE's testimony and the DOT arises from SSR 00-4p and does not apply to other resources. *Shaibi*, 883 F.3d at 1109 n.6.

[20] Even before *Shaibi*, many district courts rejected the argument that ALJ's must address conflicts between the testimony of the VE and sources other than the DOT. *Walker v. Berryhill*, Case No. CV 16-01040-KES, 2017 WL 1097171, at * 3 (C.D. Cal. Mar. 23, 2017) (collecting cases)

*Berryhill*, No. CV 17-5402, 2018 WL 456130, at *3 (C.D. Cal. Jan. 17, 2018) (collecting cases) ("[A]n ALJ is under no obligation to consult the OOH or attempt to reconcile conflicts between the OOH and vocational expert testimony.")  The ALJ did not err in not considering possible conflicts between the VE's testimony and O*NET.

### (2)  ALJ Decision was Supported by Substantial Evidence

As noted above, relying on O*NET, Plaintiff argues the usher position requires levels of near vision acuity, categorized as "important," and finger dexterity, categorized as "somewhat important,"[21] that Plaintiff lacked.  Additionally, Plaintiff argues the ALJ erred in accepting the VE's testimony regarding usher position without the VE specifying the number of hours the Plaintiff would have to work.  (Pl.'s Mot. at 15-16.)  However, as the Commissioner explains, the ALJ hypothetical to the VE limited Plaintiff to occasional near visual acuity and occasional handling and fingering.  (AR 157.)  As to Plaintiff's challenge to the VE not testifying to the number of hours of work required for the usher position, the Commissioner points to the lack of any authority requiring a VE address that issue.  (Def.'s Cross Mot. at 6; Def.'s Reply at 3-4.)

The VE testified that subject to the limitations noted above regarding near visual acuity, fingering, and handling, as well as other limitations, that Plaintiff was capable of the usher position with 90, 200 jobs available nationally.  The VE's testimony is also consistent with the DOT.  For the usher occupation, both the DOT and accompanying SCO explicitly indicate that near acuity, is "Not Present," meaning the "activity or condition does not exist."  DOT 344.677-014; SCO 09.05.08 Ticket Taking, Ushering, 344.677-014; SCODICOT.  As to handling and fingering the DOT and SCO indicate "Occasionally," meaning the "activity or condition exists up to 1/3 of the time."  *Id.*

_____

[21] The categories Plaintiff relies on through O*NET include Not Important, Somewhat Important, Important, Very Important, and Extremely Important.  O*NET defines Near Vision as "The ability to see details at close range (within a few feet of the observer).  Finger dexterity is defined as "The ability to make precisely coordinated movements of the fingers of one or both hands to grasp, manipulate, or assemble very small objects."

The testimony did not specifically address Plaintiff's novel argument, based on O*NET information, that the position did not constitute substantial gainful activity unless Plaintiff worked more than 30 hours a week and that Plaintiff could not work that number of hours based on O*NET's indication that the position is typically not worked 40 hours per week.  (AR 407; Pl.'s Mot. at 15-16, Pl's Reply at 4.)  However, Plaintiff has not cited any cases indicating that a VE must explain the number of hours a claimant would be required to work for a position *identified in the DOT* to constitute an available occupation.  Notwithstanding, the Court notes that even the O*NET information Plaintiff relies on does not indicate an usher would not typically work more than 30 hours a week. (AR 407.)  Rather, it indicates that the position is typically worked less than 40 hours per week.  (*Id.*)

Even assuming there is any conflict, courts assessing possible conflicts with non-DOT sources like O*NET have concluded that VE testimony constitutes substantial evidence, regardless of any conflict with non-DOT sources.  *McCloud*, 2018 WL 987222, at *5 (citing *Bayliss*, 427 F.3d at 1218) ("VE testimony, by itself, constitutes substantial evidence when in response to a complete hypothetical."); *Gonzalez*, 2018 WL 456130, at *3 ("[E]ven if there existed a conflict in the present case between the vocational expert's testimony and OOH, the ALJ properly could rely on the vocational expert's testimony without further inquiry or explanation."); *see also Holden v. Berryhill*, 722 Fed. Appx. 675, 676 (concluding "that there was no error in the ALJ's decision to rely on the vocational expert's testimony without consulting the OOH.")

An ALJ may rely on VE testimony provided in response to a hypothetical to conclude there are available jobs the claimant is capable of subject to their limitations. *Bayliss*, 427 F.3d at 1217 ("The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper.")  "A VE's recognized expertise provides the necessary foundation for his or her testimony.  Thus, *no additional foundation is required*." *Bayliss*, 427 F.3d at 1218 (emphasis added).  This applies to testimony regarding the number of relevant jobs in the national economy as well.  *Id.*; *Holden*, 722

Fed. Appx. at 676 (quoting *Shaibi*, 883 F.3d at 1109-10 and *Johnson*, 60 F.3d at 1435-36 and concluding "an ALJ may rely on a vocational expert's testimony concerning the number of relevant jobs in the national economy and need not inquire *sua sponte* into the foundation for the expert's opinion."). As discussed above, an ALJ can even rely on VE testimony when it conflicts with the DOT, assuming there is "persuasive evidence to support the deviation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (citing *Johnson*, 60 F.3d at 1435). However, as noted above, the VE's testimony here is consistent with the DOT. This is significant because "[t]he DOT creates a rebuttable presumption as to the job classification" and "is the best source for how a job is generally performed.'" *Id.* (citing *Johnson*, 60 F.3d at 1435); *Carmickle*, 533 F.3d at 1166; *see also Gallo v. Comm'r of Soc. Sec. Admin.*, 449 Fed. Appx 648, 649 (9th Cir. Sept. 8, 2011) ("VE testimony may become unreliable on account of a conflict with the DOT, but not on account of its compliance with the DOT.") (internal citations omitted). Here, both the VE's testimony and the DOT, a source that raises a rebuttable presumption as to job classification, indicate Plaintiff was capable of this occupation subject to his limitations.

Even if the evidence were susceptible to Plaintiff's interpretation, when there is more than one rational interpretation, "it is the ALJ's conclusion which must be upheld." *Gallant*, 753 F.2d at 1453. And, the VE's testimony, free from any conflict with the DOT and the presumption in favor of it, is more than sufficient "relevant evidence as a reasonable person might accept as adequate to support" the conclusion that Plaintiff was capable of the usher position. *Lingenfelter*, 504 F.3d at 1035 ("Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."). Considering the entire record and accepting the ALJ's rational interpretation of the evidence, the Court finds the ALJ's decision free from legal error and supported by substantial evidence.

In summary, Plaintiff waived any challenges to the VE's testimony based on O*NET by not raising the issues in any respect at all before the ALJ. Even if the

challenge was not waived, the ALJ did not err in relying on the DOT and VE testimony without inquiring into possible conflicts with O*NET.  And, the ALJ's decision was supported by substantial evidence — the VE's testimony that is consistent with DOT.

## V.    CONCLUSION

Based on the reasoning set forth above, the undersigned Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment (ECF No. 14) be **DENIED** and that Commissioner's cross-motion for summary judgment (ECF No. 15) be **GRANTED**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **July 17, 2019**, any party to this action may file written objections with the Court and serve a copy to all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 26, 2019**.

Dated:  July 2, 2019

Hon. Bernard G. Skomal
United States Magistrate Judge

18CV536 GPC (BGS)